JOHN (a slave) *v.* THE STATE, 24 Miss., 569.

### HOMICIDE.

Under the statute, approved March 9th, 1850, it is not necessary to allege in the indictment the name of the owner of any slave guilty of any crime punishable with death. But if the ownership is alleged, it must be proven on the trial.

It is incumbent on the prosecutor to prove, on the trial, every fact and circumstance set out in the indictment which is material and necessary to constitute the offense charged. And every averment in the indictment not necessary to constitute the offense may be rejected as surplusage. But this rule does not apply to allegations, which, however unnecessary, are nevertheless descriptive of that which is material.

Error to Hinds circuit court. TOMPKINS, J.

The facts in substance, are, that Mr. Banks, the first witness introduced, proves that, as a physician and surgeon, he examined the body of the negro killed, who was found dead near a wagon on the road; was sure he was killed by choking with a rope that was then found around his neck; had heard that negro killed belonged to Fegune Lowe, but did not know it. The dead negro's pockets had been rifled after death; there were cuts on the hands and fingers. He saw defendant, John, on the same day of the killing, after his arrest, and examined the wound in his head, and thought it was made by some sharp instrument, and defendant said it was inflicted by a blow from one of the wagon wheels in helping the negro that was killed to get his wagon out of the mud the night before; but witness did not think the wound could have been inflicted that way; and upon examining defendant's mouth, one tooth had been knocked out, and blood was streaming from it. Defendant said he had received the wound a day or two before on the railroad, and these wounds, in witness's opinion, had not been inflicted more than twelve hours; witness could not say to whom the dead negro belonged.

Dr. Williams testified, that John told him that two of the depot boys had killed Austin, but did not say he knew it, and John said he was at the wagon the evening before, when it was stated he got wounded on the head; witness knew nothing of the man killed. John was hired to work on the railroad, but left the morning of the killing.

H. Moseley was at the coroner's inquest, and saw the rope

around the neck; saw the wounds on the fingers. He heard John say, after arrest, that he knew a man had been killed, but he did not do it; heard him say before the examining court, that he (Austin) was killed by Jim Saunders and Henry Simmons; a shirt was exhibited, but did not know that John ever had it on, or who the dead negro belonged to, who seemed to have been very stout.

George (a slave) stated, that about supper time, on the night the wagon was stalled, he came across John and old Jim, who helped the man to get his wagon out of the mud and up the hill; and then he, witness, started home, and old Jim back to Clinton, and John went along after the wagon, and did not see John again until after arrested.

Alfred (a slave) stated, that he saw John on the railroad on the evening the murder was committed, and asked him where he was going, and John told him to go to hell; but did not see John again until he came to the shanty, about an hour before daybreak the next morning; he was very muddy, and witness and John slept together in the shanty. John did not go to work in the morning, but said he was sick, and went to bed; at dinnertime he saw blood on the shirt-collar and bosom of John's shirt, and knows that to be the shirt exhibited to the jury; he could not positively say John was not at the shanty on the night the murder was supposed to have been committed.

Davy (a slave) stated, he and John both worked on the railroad and slept in the same shanty, and he did not see John in the shanty that night until he came in, about an hour before day; John then said he was sick. John told witness a short time before that, while at work together, that he thought he ought to kill somebody; but he thought this a mere foolish remark. Next morning, when witness heard a man had been killed, he told Mr. T. that he had better examine John; but on looking into the shanty, found he was not there, and witness did not see John again until he was arrested.

Willis (a slave) states, at about one o'clock on the night the murder was committed, John came to the shanty where they both slept, and John called Nathan out to take a drink with him, and Nathan soon returned, but John went off, and he did

not see him any more until about one hour before daybreak next morning; that, on the day the inquest was held over the body, he saw a number of persons going towards the dead body, and John asked him, witness, where all these people were going to, when he replied that they were going to have a jury and make all the railroad hands go before them and put their hands on the dead body, and that blood would follow the hand of the murderer; that John then took off his cap and asked Nathan to take care of it, took his hat, jumped over the fence near the shanty, and went off, running some at first; and this took place on the day John was arrested, and John did not go to work on that day. Witness knew Austin, the negro killed, and heard him say he belonged to Mr. Lowe; that Austin had been coming to the depot ever since the railroad was built, hauling cotton and other freight, and he had seen Mr. Lowe with him, controlling and managing him as his own.

This was all the evidence for the state.

The defense then introduced Jack, (a slave,) who stated, that on Thursday night, about midnight, he, being then run away from those to whom he was hired, met John in the road, from one to two hundred yards from the wagon, and between it and Clinton; that he had come across the field and got into the road near where he had met John, and he, witness, was going towards the wagon to get something to eat, but that just after he met John, and while they were standing together, he heard some noise in the direction of the wagon, heard some one say, "Boys, my head is cut; I'll give up;" that he asked John what was the matter; to which he replied, they were quarrelling and fighting down there, he believed; that witness did not know whether John had been to the wagon or not; that he and John came on towards town, and when they got to the railroad, John went towards the shanty, and he in the opposite direction. Jack and John belonged to the same master, (Baxter,) and Cook only controlled them.

The error chiefly relied on in this court is, the refusal of the circuit court to grant the following instructions, asked by the counsel for the prisoner:

"Unless the jury are satisfied beyond a reasonable doubt, from

the proof adduced and allowed to go before them by the court, that the defendant John is the property of John D. Cook, as alleged in the indictment, they must find a verdict of not guilty."

The prisoner was convicted of murder; a new trial was moved for and overruled, and this writ of error prayed by the counsel for the prisoner.

*G. P. Foute* for plaintiff in error.

The allegation in the indictment of the ownership of the slave (the accused) is material and absolutely necessary. The ownership of the deceased slave must also be alleged and proved. See Archbold's Criminal Pleading, pp. 34, 35, 38, 39, 40–45, and notes p. 100; 2 Russ. on Cr., 706, on subject of surplusage, etc.; 3 McLean's R., 233. See also Hutch. Code, 540–542, art. 24. This is the statute which entitles the owner or master of the slave to half his value, upon his conviction and execution. This statute is also the same (differing only in some minor particulars) with the statute of Alabama upon the same subject.

In the absence of any decision of our own court, as to the effect which this statute should have in all indictments of slaves for capital offenses, I submit that the ruling of the supreme court of Alabama should have great weight. On this point, see the case of Flora (a slave) v. State, 4 Porter R., 111; and State v. Marshall (a slave), 7 ib., 302. (The opinion of the court in the last case contains the statute of Alabama, Clay's Dig., 474, § 19.)

These cases, I insist, are conclusive upon the point, that the allegation must be made and proved. Our statute (art. 24, above referred to) makes the necessity still stronger, for it declares that no non-resident owner of any slave shall be entitled to the benefit of the act. This would seem to render it necessary and material, that not only the ownership of the slave should be alleged, but the citizenship of such owner.

Upon general principles of law and common sense, I also insist that such an allegation is material and necessary. This indictment is found under the statute, Hutch. Code, 521, § 55, providing for the punishment of slaves for certain offenses therein named.

A slave, by our law, is declared and held as personal property. An offense, therefore, committed by or against him, is an offense by or upon the property of the master or owner.

The property in him, therefore, is not only necessary to identify him, but is a part of his existence, his estate or condition, the way in which he is known and described by law, and in common parlance. The very meaning and essence of the term "slave" indicates property in another than himself. It is thus contradistinguished from all other terms implying any other kind of servitude. If by the policy and requirements of our law, in all writings, conveyances, bills of sale, and every other known method for conveying title in him, "John" is to be described as belonging to, or the property of A. B., it would seem that an indictment which seeks to deprive A. B. of the life of his property, should describe and prove him to be such property.

But if it is not a material and necessary allegation to be made in the indictment, yet being made, can it be regarded as surplusage, or must not the allegation be proved as laid?

The allegation, though unnecessary, must be proved. Russell on Crimes, 706, 707, 708, and cases there cited; also authorities first above cited.

1 Chitty on Pleading, 263, lays down the rule, that matter which is wholly foreign and irrelevant, can only be rejected as surplusage. "If the prosecutor choose to state the offense with greater particularity than is required, he will be bound by the statement, and must prove it as laid." 3 McLean's R., 233, 234, and Rex v. Dowling, 5 T. R., 311, therein cited.

But if mistaken in the foregoing positions, the proof in this case shows a fatal variance between the allegation and proof of ownership in both the slaves, the accused and deceased. The indictment alleges that the slave John (the accused) is the property of John D. Cook; when John D. Cook, introduced as a witness on the part of the defendant himself, testifies that John is not his property, but belongs to a man by the name of Baxter, who lives in North Carolina. There is no proof at all as to the true ownership of the deceased (Austin). See Archbold's Crim. Plead., marginal page 100, 101; also 15 Maine R., 476, and au-

thorities cited upon the foregoing points.  Ruff. & Hawk. R.,
32, etc.

*D. C. Glenn,* attorney general.

The point in this case arises on two charges given for the state,
that it was unnecessary to prove the ownership of the accused,
or deceased negro.

The court was correct.  Ownership had nothing to do with
the charge; it is no part of the offense.  It was equally criminal
to kill the slave of one man as another; and the slayer is equally
guilty if he be the property of A. or B.  The accused has no
further interest in having it stated than for purposes of identity.
For such a defect in proof, an acquittal being had, a plea of *au-
trefois acquit* would be good, and this incontestably proves that
the title of ownership of the slave is not of essence of the offense
of killing or being killed by him.  If averment is made, it may
be rejected as surplusage, and the verdict cures the defect if any
there be.  See generally on the negro question, Pye's case, 2
East Cr. Law, 785; Ch. Cr. L., 168, 169; ib., 211, 213, 214, 215,
232, 233; 3 ib., 1087; 2 Hawk. Pl. Cr. Ch., 25, § 71, 72; 10
Missouri R., 232; 8 S. & M., 584, and cases cited; 1 Hawks R.,
34; 2 Bailey R., 67; Riley's Law Cases, 298; ib., 299.

Smith, C. J.:

This was an indictment for murder, tried in the circuit court
of Hinds county.  It was alleged in the indictment, that the
plaintiff in error was the property of John D. Cook.  Austin,
the subject of the homicide, was likewise a slave, and stated to
belong to Figune Lowe.  The jury found a verdict of guilty; a
motion was made for a new trial, which was overruled, and the
case hence comes into this court.

The exceptions chiefly relied on for a reversal of the judgment
refer to the refusal of the court to give the third and fourth in-
structions requested on behalf of the prisoner, and the decision
of the court on the motion for a new trial.  The first of these
instructions is in the following words, to wit: "Unless the jury
are satisfied beyond a reasonable doubt, from the proof adduced
and allowed to go before them by the court, that the defendant
John is the property of John D. Cook, as alleged in the indict-

ment, they must find a verdict of not guilty." The second instruction laid down the same rule, in reference to the alleged ownership of the deceased.

We will proceed to inquire, in the first place, whether the court erred in refusing to grant these instructions.

By the statute approved the 9th of March, 1850, which was prior to the commission of the offense charged in the indictment, it was enacted, that "it should not thereafter be necessary to allege in the indictment the name of the owner of any slave guilty of any crime punishable by the laws of this state with death."

The history of this statute is familiar to the bar. It was believed by many members of the profession, that it was necessary to warrant the conviction of a slave charged with a capital felony, that the name of the owner should be alleged in the indictment and proved as averred. The decision of this court on that point had not been made; to dispel all doubt on the subject the act was passed. Whatever may have been the previous rule, the effect of this statute is clearly to dispense with the necessity of the averment of ownership in indictments against slaves for capital offenses; and, of consequence, of the proof of ownership; for unless the averment is made, the proof would be unnecessary. But, we apprehend, the recognized rules of criminal pleading were not designed by the legislature to be changed, except so far as it was made necessary by them, to allege the ownership of a slave capitally charged. In a case, therefore, in which the allegation of ownership is contained in the indictment, it becomes a question whether such averment is to be regarded as impertinent or foreign to the charge, and, therefore, to be rejected as surplusage, or as unnecessary and immaterial, but being made, requires to be proved as alleged.

The general rule in regard to the proof of indictments is, that it is incumbent on the prosecutor to prove at the trial every fact and circumstance stated in the indictment which is material and necessary to constitute the offense charged.[1] On the other hand,

---

[1] Wharton Am. Cr. Law, 622; 1 Greenl. Ev., 74; 3 ib., 24; Commonwealth v. McKie, 1 Lead. Cr. Cases, 347, note; 1 Archbold Cr. Pr. & Pl. 385; 4 Esp., 136, 139, 144; 2 East P. C., 993; 4 Black. Com., 356; 1 Leach, 300, 392, n. a; 2 T. R., 201, n. a; 3 Camp., 401; 2 Stark. R., 155; Commonwealth v. Kimball, 24 Pick., 366; Common-

every fact and circumstance laid in the indictment, which is not a necessary ingredient in the offense, may be rejected as surplusage, and need not be proved at the trial.[1]    Archb. Crim. Plead. 39.    These rules are well recognized; but in their application to particular cases it is not unfrequently somewhat difficult to distinguish between allegations which are material and necessary, and those which may be totally disregarded as proof. Phillips, in his Treatise on Evidence (vol 1, p. 500), lays down a rule by which the immateriality of matter alleged in the indictment may be tested.    "If," says he, " an averment may be entirely omitted without affecting the charge against the prisoner, it will be considered as surplusage, and may be disregarded in the evidence."    But this test is held applicable only to averments which are not only unnecessary in themselves, but foreign to the charge.    As an illustration of this rule, the case of the King v. Minton may be referred to.    In that case, which is cited in 2 East P. C., 1021, the defendant was charged with having committed arson in the night time, and it was proved on the trial that the offense was committed in the day; he was convicted, and the conviction was holden good, for the reason that the averment, which charged the offense to have been committed in the night, was unnecessary and foreign to the charge, and, therefore, might be disregarded in the evidence.    So, upon the same principle, in Rex v. Holt, 5 T. R., 446, it was holden, upon an information for a libel with intent to bring the proclamation of his majesty into contempt, that an averment that divers addresses had been presented to the king on the occasion of such

---

wealth v. Dana, 2 Metc., 329; 2 Leach, 594; People v. Townsend, 3 Hill, 479; Commonwealth v. Hope, 22 Pick., 1; State v. Noble, 15 Maine, 476; Commonwealth v. Tuck, 20 Pick., 356, 364; U. S. v. Vickery, 1 Har. & Johns., 427; Commonwealth v. Pray, 13 Pick, 359; U. S. v. Howard, 3 Sum. 12; State v. Cassedy, 1 Richardson, 91; State v. Morrison, 2 Iredell, 9; Commonwealth v. Arnold, 4 Pick., 251; Commonwealth v. Gable, 7 Serg. & R., 423; Addison, 171, 173; 11 Mass., 93; 2 Camp., 583; 2 East P. C., 782; 3 East, 192; 3 Camp., 10, 12; 2 Hale, 29.

[1] Wharton Am. Cr. Law, 622; Leach, 536; 1 T. R., 322; Com. Dig. Pleader, c. 28, 29, F. 12; 4 Coke, 412; Mod., 327; People v. Lohman, 2 Barb. S. C. R., 235; State v. Copenburg, 2 Strobh., 273; State v. Brown, 8 Humph., 89; State v. Cozens, 6 Iredell, 82; State. v Wilder, 7 Blackf., 582; U. S. v. Howard, 3 Sumner 12; State v. Noble, 3 Shep., 476; 2 Russ. on Crimes, 786; State v. Palmer, 35 Maine, 9; Jilliard v. Commonwealth, 2 Casey, 170; State v. Bailey, 11 Foster, 521; State v. Carrigan, 24 Conn., 296; State v. Elliott, 14 Texas, 423; Wharton Cr. Law, 592, 599; Leach, 127, 536; Rex v. Morris, 1 Leach C. C., 109; 1 Archbold Cr. Law, 282; 2 Hale, 182.

proclamation, was disconnected with the charge and did not require proof.

But this rule has never been held to apply to allegations which, however unnecessary, are nevertheless connected with, and descriptive of that which is material; or, in other words, to averments which might with propriety have been dispensed with, but, being inserted in the indictment, are descriptive of identity of that which is legally essential to the charge. 3 Phil. Ev., 668, Cow. & Hill's ed.; Arch. Cr. Plead., 101; U. S. v. Porter, 3 Day, 286.[1] As, for example, an indictment for stealing a black horse will not be supported by proof that the horse was of some other color, for the allegation of color is descriptive of that which is legally essential to the offense, and cannot be rejected. 2 Starkie Ev., 1531. So also on this principle, upon an indictment under the statute of 57 Geo. 3, c. 90, for being found armed with intent to destroy game in a certain wood, called the Old Walk, in the occupation of a person named; it was holden, it appearing that the wood had always been called the Long Walk, and never the Old Walk, that although it was unnecessary to state the name of the close where the occupation was stated, yet, being stated, it was material, and could not be rejected. Rex v. Owen, 1 Moody C. C., 118; Rex v. Craven, 1 Russ. & R. 14; Rex v. William Deely, 1 Moody, C. C., 303.

Let us apply this rule to the question whether the averment that the prisoner was the property of Cook, could be treated as surplusage, and, therefore, disregarded in the evidence.

As we have seen, this allegation was unnecessary. The ownership of the prisoner was in no respect an ingredient in the offense charged, which was complete when it was shown that one human being was wilfully, feloniously and maliciously killed by another human being. But, the fact of the ownership being alleged, it

[1] See also Wharton Am. Cr. Law, 626; Rex v. Plestow, 1 Camp., 493; State v. Clark, 3 Foster, 429; Wharton Am. Cr. Law, 629; State v. Canney, 19 N. H., 135; Dick v. State, 30 Miss., 631; State v. Langley, 34 N. H., 529; U. S. v. Howard, 3 Sumner, 12; Commonwealth v. Atwood, 11 Mass., 93; Commonwealth v. Tuck, 20 Pick., 356, 364; State v. Noble. 15 Me., 476; Commonwealth v. Hope, 22 Pick., 1; U. S. v. Brown, 3 McLean, 233; 1 Bishop Cr. Procedure, 233; Commonwealth v. King, 9 Cush., 284; Rex v. Woolford, 1 Moody & R., 384; State v. Johnson, 6 Jones (N. C.), 485; State v. Weeks, 30 Maine, 182; U. S. v. Kean, 1 McLean, 429; State v. Jackson, 30 Me., 29; Dick v. State, 631.

became a part of the identity of the prisoner ; quite as much so as the name under which he was indicted. It was, at least, a statement of an unnecessary particular, but in connection with, and as descriptive of, that which it was essential to allege. If so, it comes within the principles of the cases above cited ; and we do not feel authorized to say that it was unnecessary to prove it.

But it does not follow, because the averment of ownership could not be disregarded in the evidence, that proof in the strictest sense was required. The rule seems to be, in regard to averments of this character (that is, averments in reference to matter which it is unnecessary to allege, but, being made, it becomes necessary to prove them), that precise proof is never required except when the subject of the averment is a record, a written agreement, and, perhaps, an express contract. Gould Pl., 164, 165. This is the doctrine in reference to the pleadings in civil proceedings. The same rule applies in criminal cases, except that in the latter, courts will be more strict in requiring proof of matters alleged than in the former. United States v. Porter, 3 Day's R., 286.

If this rule was applicable to the proof in regard to the averment of ownership, the third and fourth instructions were improper. They laid down the rule, that, before the jury could convict the prisoner, they should be satisfied beyond a reasonable doubt of the fact of ownership, as charged in the indictment. This was requiring too high a degree of evidence in reference to a question of property, even admitting the necessity of strict proof in regard to the ownership of the prisoner. We think, therefore, that the court did not err in refusing to give the said instructions.

We will now proceed to notice the question arising upon the decision of the circuit judge in overruling the motion for a new trial.

We do not deem it necessary, it might, perhaps, be improper, to go into a minute examination of the testimony upon which the prisoner was convicted. It is sufficient to remark, that the whole of the evidence offered in support of the charge was circumstantial ; that no fact distinctly proved was, in itself, suf-

ficient to raise more than a very slight presumption, if any at all, of the guilt of the prisoner ; and that all of the circumstances proved on the trial, when united, were, upon well-recognized principles, insufficient to create such a presumption of his guilt as would warrant a conviction.

We, therefore, reverse the judgment, remand the prisoner, and award a new trial in the court below.