## THE STATE v. THOMAS McGRATH, Appellant.

### Division Two, May 26, 1910.

1. **INDICTMENT: Statutory Offense: Use of Word Feloniously.** Where the offense is statutory and is made a felony, it is necessary to use the word "feloniously" in charging it.

2. ———: ———: ———: **False Election Returns.** An indictment which simply charges that certain ballots "were wrongfully and falsely returned" to the Election Commissioners, does not sufficiently charge a felonious return. And that defect is not cured by a charge that the defendant election judge "illegally, fraudulently and feloniously did change and attempt to change the true and lawful result of said general primary, by making a wrong count and false return of the ballots then and there legally and lawfully cast." The indictment does not charge a felonious return, but simply a false count and return. To charge the crime of making a false and fraudulent return it must be charged to have been feloniously made.

3. **EVIDENCE: Overthrowing Poll Book: Uncertainty of Witness.** In the trial of an election judge, charged with the felony of making a false return, where the ballot is not in evidence, testimony of a witness that he thought he voted for a certain candidate, but was not positive whether he did or not, was not sure that he did, and did not know because there were so many names on the ticket that he could hardly remember how he voted, should be stricken out, as wholly insufficient to overthrow the presumption in favor of a right count on the part of the election officer.

4. ———: **Charge that Ballot was Counted for Particular Candidate.** The charge that a certain voter cast his ballot for a particular Democratic candidate and that it was counted for another particular Democratic candidate for the same office, is not sustained by proof that the vote was cast for the particular candidate named, and the other candidate was credited in the returns with the same number of ballots that were certified to Democratic candidates for other offices who had no opposition—there being at the same primary a Republican candidate for the nomination for the same office. To so conclude is to enter the field of speculation and conjecture, and to ignore the rule as to reasonable doubt.

5. ——: ——: **Unnecessary Allegation.** It was unnecessary to allege that the ballot cast for one candidate was counted for another named candidate for the same office; but having been charged, it was necessary to prove it. That charge, while unnecessary, yet being alleged, must be proven. And it is not proven by a showing that no votes were counted for the candidate for whom the vote was cast.

6. **REMARKS OF COUNSEL: Bringing Ballots Into Court: No Rebuke.** The circuit attorney, in his final argument to the jury, in a case where defendant, a judge of election, was charged with having made a false and fraudulent return, and was convicted and his punishment fixed at four years' imprisonment, said: "If they have any doubts about what was in the ballots, let them open them up, let them bring them into court and place them in the hands of this jury and let it be conclusively determined." Defendant's counsel objected, and asked the court to rebuke the attorney. The court said: "You know that nobody can bring those ballots here under the present condition of affairs, and you ought not to hold defendant responsible for what he cannot do. Proceed with the argument of the case under the instructions and evidence before the court." Thereupon the circuit attorney said: "It has been stated here that in this case an application for a writ of prohibition was filed." To that defendant's counsel replied: "This defendant had no more to do with it, and Mr. Sager knows it, than your Honor." The court said: "I have instructed Mr. Sager to proceed with the argument on the evidence and instructions and not outside matters." The defendant had nothing to do with the application for a writ of prohibition, and under the law the ballots could not be brought into court. *Held,* that the conduct of the circuit attorney called for stern rebuke, and the jury should have been warned to disregard his statements. Besides it was an indirect method of calling the jury's attention to defendant's failure to testify, and requiring him to prove his innocence.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields,* Judge.

REVERSED AND REMANDED.

*C. Orrick Bishop* for appellant.

(1) The trial court erred in permitting certain witnesses to testify as to how they voted, or for what

candidates, at the primary; not from positive knowledge, nor upon positive assertion, but from indistinct recollection, pure guesswork, and in some instances where the witnesses admitted that they were not sure. The indictment affirmed positively that certain ballots were fradulently counted for certain candidates, when in fact they were cast for other persons; and this was a case for positive affirmative proof of the allegations. The poll book showing the returns of an election, made by the officers, is presumed to be correct and true, imports verity; and this presumption cannot be overthrown by other than positive and affirmative evidence. (2) There is no evidence in the record that any ballot alleged to have been cast for. any one candidate was counted for any other, as charged in the indictment. For instance: it was affirmatively and positively averred in the indictment that the defendants did the act charged "by then and there illegally, willfully, fraudulently and feloniously, wrongfully counting and falsely returning the same in the following manner, to-wit, by then and there counting and returning the ballot of William J. Robinson . . . for and in favor of William S. Cowherd, candidate for Governor of Missouri on the Democratic ticket . . . when in truth and in fact said ballot of the said William J. Robinson was duly and legally cast for and in favor of William H. Wallace, candidate," etc. This allegation, being specific, was material and required strict proof to support it. Assuming that said Robinson testified that on the occasion of the primary he cast a ballot for William H. Wallace, and that on neither of the poll sheets or returns it appeared that any ballot was cast or counted for William H. Wallace, but that a certain number were cast and counted for William S. Cowherd, and a certain number for Herbert S. Hadley, candidates for Governor at such primary, how could it be said that the ballot alleged to be cast by said Robinson was counted for William S. Cowherd and not for Herbert

S. Hadley? And so there was no evidence in this case that this particular ballot, nor any other mentioned in the indictment, was actually counted for the person alleged. Had the indictment simply charged that the particular ballot sworn to have been cast for Wallace was not counted nor returned for Wallace, there might have been some evidence to support that allegation. (3) The closing remarks of the circuit attorney were grossly prejudicial to the appellant. There was no evidence before the jury—it had only been stated in argument of counsel before the court, upon an objection—that an order of prohibition had been temporarily granted by this court against the production and opening in court of the ballot boxes of this primary and precinct; yet this appellant was thus openly charged with the duty of producing the ballots in court and exhibiting them to the jury, and officially accused (though he does not appear to have had anything to do with it) of having blocked the wheels of justice and of having suppressed evidence which might aid the prosecution. It is seldom, if ever, that so gross a perversion of legitimate argument occurs; it was not only an unwarranted attack upon appellant, but a challenge to him to produce in his own behalf evidence which the Constitution inhibits, or submit to a conviction. The remarks merited a stern and solemn rebuke from the court, as asked for by appellant, but they met with only a mild protest, if, indeed, it can be called a protest, and the jury were not even told to disregard it. (4) While the indictment charges that "the defendants illegally, willfully, fraudulently and feloniously did change and attempt to change the true and lawful result of said general primary . . . by making a wrong count and false return of the ballots . . . by then and there illegally, willfully, fraudulently and feloniously, wrongfully counting and falsely returning the same," etc., it concludes "that all of the said ballots so cast as aforesaid were (not willfully and feloni-

ously, but) wrongfully and falsely counted and (not willfully and feloniously but) wrongfully and falsely returned by the said (defendants) . . . as not having been cast for the candidates for whom they were voted,'' etc. To that extent the indictment is bad; if the conclusion is a material and necessary part of an indictment, especially where it is made so by its specific allegations, then it is as necessary that it follow the language of the statute, and comply with the established forms and precedents, as any other part of the indictment.

*Elliott W. Major,* Attorney-General, and *Chas. G. Revelle,* Assistant Attorney-General, for the State.

(1) (a) The general primary election held August 4, 1908, was held and conducted under the regulation and protection of the election laws of the State, and was an election within the meaning of the criminal laws directed against making a false return of the ballots cast at an election. State ex rel. v. Taylor, 220 Mo. 618; Commonwealth v. Boyle, 3 Pa. Dist. 591. (b) The indictment includes within its allegations an offense under secs. 2116 and 2117, R. S. 1899, also 2120, Laws 1903, p. 159, and meets the requirements of criminal pleading. State v. Krueger, 134 Mo. 262; People v. Sullivan, 7 N. Y. Crim. 420; State v. Cummings, 206 Mo. 613. The indictment is not subject to the criticism that it does not charge that the act complained of was feloniously done. The gravamen of the offense consists in making a wrong count and false return of ballots lawfully cast at an election. The various acts constituting this offense are specifically charged to have been done willfully and feloniously. That portion of the indictment which omits the word feloniously is not essential to the charging parts and is but surplusage. The offense is fully charged without it, and its presence in no manner detracts from the sufficiency or

certainty of the charging parts, and is therefore sufficient. State v. Taylor, 117 Mo. 181; State v. Rolley, 135 Mo. 677; State v. Walker, 167 Mo. 366; State v. Spaugh, 199 Mo. 147. (2) While the indictment charges that thirty-two ballots therein designated were cast for candidates named, and counted for and returned in favor of certain other candidates, it is clear that it was not essential to the State's case to prove that each and all of the ballots named in the indictment were cast, counted and returned in the manner charged, it being sufficient that the evidence disclose that any one or more of such ballots were fraudulently counted and falsely returned. In this connection William Stogsdill, Baldwin Tressels, A. G. L. Lauman, John Moore, James L. Robinson, Louis Stephan, John S. Stogsdill, James Walsh, James H. Murphy, J. Coleman, John Conroy, Frank Schaettler, all being duly registered as qualified voters and entitled to vote in that precinct, testified positively that they voted for Stapel for Governor, and yet the returns made and filed by the defendant and the other judges, disclose that not a single ballot was counted or returned in favor of Mr. Stapel. All these parties voted in the precinct for which defendant was a judge, and their ballots were not rejected as being invalid, but were counted for and credited to another candidate as is manifest from the poll books and returns which disclose that but 252 persons appeared at that precinct and cast their ballots, including in that number these particular witnesses, and that 252 ballots were counted and credited in that precinct to candidates for Governor. Mr. Cowherd received 199, or every Democratic vote, while Mr. Hadley received 53, or every Republican vote. Four witnesses, whose ballots were counted for some candidate for Governor, testified positively that they voted for Ball, while one testifies positively that he voted for Wallace, yet neither of these candidates was credited with a single vote. Eight witnesses, who

voted, are positive in their statements that they cast their ballots in favor of Mr. Reller for Congress. Four are positive that they cast their ballots for Mr. Mc-Skimming for Congress, one for Mr. Hunt and one for Mr. Hines for Congress, yet none of these ballots were counted for such candidates, they being credited with no votes, while Mr. Gill was given 199, the same number that was counted and returned for Democratic candidates who had no opposition. As heretofore stated, the gravamen of the offense charged consists in making a false count and a wrong return, and the evidence abundantly supports that charge. Appellant contends that there is no evidence tending to prove that such ballots were actually counted and returned for the particular candidate named in the indictment. For illustration, he says, assuming that William J. Robinson testified that on the occasion of the primary he cast a ballot for William H. Wallace, and that neither on the poll books nor return it appeared that any ballot was cast or counted for William H. Wallace, but that a certain number were cast and counted for William S. Cowherd, and a certain number for Herbert S. Hadley, candidates for Governor at said primary, how can it be said that a ballot alleged to be cast by said Robinson was counted for William S. Cowherd and not for Herbert S. Hadley. The record is a sufficient reply to this suggestion. It discloses that 53 ballots were counted and returned for Hadley for Governor and that 53 ballots were counted and returned for the Republican candidates for each office to be filled. In other words, there were 53 Republican ballots counted and returned on each office and for Republicans all along the line, and Mr. Hadley and the other Republican candidates were credited with exactly 53 votes. The witness Robinson, and certain other witnesses, did not vote the Republican ticket, nor for Republican candidates, but cast Democratic ballots in favor of Democratic candidates. Mr. Cowherd was credited with identically the same

number of ballots that were credited to Democratic candidates who had no opposition, showing that every Democratic ballot cast was counted and returned in his favor, including the Democratic ballots of Robinson and other witnesses, who cast their ballots in favor of Mr. Ball and Mr. Stapel. These facts are amply sufficient to support the verdict and this court will not interfere where there is substantial evidence. State v. Matthews, 202 Mo. 147; State v. McCullouch, 171 Mo. 574; State v. Tetrick, 199 Mo. 100; State v. Williams, 199 Mo. 137. (3) The secrecy of the ballot is intended to protect the voter, and where the voter waives that protection, there can be no objection to permitting him to testify for the purpose of convicting a false and corrupt officer. Reed v. Kneass, Bright's Elec. Cas. 366; Palmer v. Howe, L. & R. 145; People v. Thacher, 55 N. Y. 535; Boyer v. Teague, 106 N. C. 625; State ex rel. v. Kraft, 18 Ore. 556; Dickson v. Orr, 49 Ark. 242; Paine on Elections, par. 766, p. 640; McCrary on Elections (4 Ed.), pars. 491, 492, pp. 362-3.

GANTT, P. J.—The defendant was indicted, with others, at the June term, 1908, of the circuit court of the city of St. Louis, with having, as one of the judges of the election, at the "general primary" held in the city of St. Louis on August 4, 1908, made a false and fraudulent return. A demurrrer to the indictment was overruled and defendant was arraigned and pleaded not guilty. At the October term he was tried and convicted and his punishment assessed at four years in the penitentiary. His motions for new trial and in arrest were heard and overruled, and from the sentence imposed he has appealed to this court.

The offense for which the State sought a conviction is defined in sections 2116, 2117, Revised Statutes 1899, in these words: "If any judge or clerk of any election authorized by law . . . shall in any manner illegally, willfully and fraudulently change or at-

tempt to change, or induce any other person to change, the true and lawful result of any election, by any act to be done either before, at the time of or after such election, by a wrong count of the ballots, by changing the true returns or making a false return thereof, or by changing the figures of the returns after they are made up, either before or after the returns are duly made,. or in any other manner except in pursuance of law or the order of the court . . . shall, upon conviction, be punished by imprisonment in the penitentiary not exceeding five years, or by a fine,'' etc. .

The indictment, after stating there was a general primary held in St. Louis on the 4th day of August, 1908, for the choice of candidates for all political parties within the State of Missouri for state and county offices and that defendant McGrath and William Gamache were selected, appointed and qualified according to law to serve as judges for said primary for the second election precinct of the third ward, and certain others as clerks, all appeared at the polling place on said date and conducted said primary in said precinct and that defendant and said other judges and clerks on said day illegally, fraudulently and feloniously did change and attempt to change the true and lawful result of said general primary, by making a wrong count and false return of the ballots then and there legally and lawfully cast at said general primary and while the same was in progress, for the various candidates for Governor except Mr. Cowherd and for various other candidates for state and city offices for both Democratic and Republican candidates, by then and there illegally, fraudulently, willfully and wrongfully refusing and failing to count said ballots, as aforesaid legally and lawfully cast for said candidates, and by then and there illegally, willfully, fraudulently, feloniously and wrongfully counting and falsely returning the same in the following manner, to-wit, by then and there counting and returning the ballots of (here follow the

names of some thirty-two different electors, with the number of their residence, with the allegation that they were counted as voting for one candidate for a specified office whereas they voted for other and different candidates), and then concludes: "and that all of said ballots so cast as aforesaid were wrongfully and falsely counted and wrongfully and falsely returned by the said Thomas McGrath, William Gamache, John Sullivan and Walter F. Guilford to the Board of Election Commissioners of the city of St. Louis as not having been cast for the candidates for whom they were voted as aforesaid, against the peace and dignity of the State."

I. It is the settled law in this State "that in all indictments for felonies the criminal act must be alleged to have been feloniously done." [State v. Murdock, 9 Mo. 730; State v. Gilbert, 24 Mo. 380; State v. Clayton, 100 Mo. l. c. 519.]

This offense is statutory, and the question arises, is it necessary to use the word feloniously in charging it? Bishop in his New Criminal Procedure, vol. 1, sec. 535, says: "In statutory felony, opinions are not quite uniform as to whether the indictment must have the word 'feloniously,' if not in the statute. Reason just as much requires it in the statutory as in the common law indictment. And in the absence of legislative command, the English courts compel it (Reg. v. Gray, 9 Cox C. C. 417, 419; Leigh & C. 365), and so do those of apparently the greater number of our States," citing State v. Murdock, 9 Mo. 730; State v. Davis, 29 Mo. 391; State v. Williams, 30 Mo. 364; State v. Deffenbacher, 51 Mo. 26; State v. Weldon, 70 Mo. 572. Each of these decisions by this court sustains the learned author's statement of the law and settles the law in this jurisdiction.

The indictment is challenged as insufficient in that it does not charge that the defendant and his associate

judge and clerks *feloniously* and *fraudulently* and *willfully* returned the said ballots as not having been cast for the candidates for whom they were voted, but merely charges they were *wrongfully* and *falsely* returned to the Board of Election Commissioners of the city of St. Louis as not having been cast for the candidates for whom they were voted. The offense denounced by the statute is liable to be punished by imprisonment in the penitentiary and thus by force of our statute is a felony. [Sec. 2393, R. S. 1899.]

It remains then to determine whether this indictment measures up to this requirement.

In State v. Krueger, 134 Mo. 262, an indictment for this offense was considered by this court and it was held that an indictment, which did not particularize the ballots alleged to have been fraudulently voted (in this case falsely counted and returned), was insufficient. In this case the pleader evidently sought to avoid that defect by naming the electors whose ballots were wrongfully and falsely counted and does in the general charging clause allege that defendant and his associate judge and clerks unlawfully, intentionally, wrongfully and fraudulently and feloniously did change and attempt to change the true and lawful result of said general primary and in said precinct by making a wrong count and false return of the ballots cast for certain named candidates, and by then and there unlawfully, intentionally, wrongfully, feloniously and fraudulently counting and fraudulently, feloniously, intentionally and unlawfully returning said ballots in the following manner by then and there counting and returning the ballots (here naming the certain electors and the candidates for whom their ballots were wrongfully counted and the candidates for whom they were really cast). After specifying these ballots, the indictment then alleges: "that all of the said ballots were wrongfully and falsely counted and wrongfully and falsely returned by the said Thomas McGrath, William Gamache, John Sulli-

van and Walter F. Guilford to the Board of Election
Commissioners of the city of St. Louis as not having
been cast for the candidates for whom they were voted
as aforesaid.'' The gravamen of this charge is the
making of a false count and return. It is obvious
from the authorities above noted that in order to
charge the crime of making a false and fraudulent
return it must be charged to have been feloniously
made. [State v. Brown, 8 Nev. 208; 22 Cyc. 333.]

Learned counsel for the State say this last clause
in the indictment can be ignored and treated as sur-
plusage and if omitted there is still a valid charge.
But what is meant by ''making a false return thereof.''
Nowhere else in the indictment is there any attempt
made to charge a ''return'' within the meaning of the
law. What constitutes the returns in an election in St.
Louis is provided in section 7324, Revised Statutes
1899. They consist, in short, of the certificates of the
judges and clerks to the statements required by the
statutes, together with the lists of voters and tally
sheets, duly enclosed and sealed, in the ballot box which
is sealed and the key removed, and these papers and
the ballot box are required to be delivered to the Elec-
tion Commissioners. The pleader having nowhere else
in the indictment pleaded the facts showing a return
of the election to the election commissioners and hav-
ing failed to charge that the ballots alleged to have
been wrongfully counted and falsely returned were *fe-
loniously, illegally, willfully and fraudulently* so count-
ed, and the result of the election was so certified by
defendant and his associate judge and clerks in their
certificates and returned or delivered to the Election
Commissioners, we think it falls short of averring facts
essential to the charging of a fraudulent and illegal
return. It seems quite obvious that the certificates
made to the Election Commissioners, if any, must
form an essential part of the State's case. As the crime
charged is that said return is a fraudulent one and

is punishable as a felony, it must be alleged to have been feloniously made, certified and returned or delivered to the Board of Commissioners with the intent to change the result of the said election. In our opinion the indictment is insufficient in this essential particular. [State v. Keating, 202 Mo. 204, 205; U. S. v. McCabe, 58 Fed. 557.]

II.   Defendant complains of the refusal of the court to strike out the testimony of certain witnesses; for instance, in the case of the witness Charles Reichenbach, who was alleged to have cast his vote for Hugh I. McSkimming for Congress and Joseph F. Dickmann for Sheriff, but whose vote was recorded for Patrick F. Gill for Congress and Edward J. Morrissey for Sheriff. He was asked: "You are not very positive for whom you voted for Sheriff? A. No, I am not very positive whether I voted for Dickmann, but I think I did. I am not sure. Q. You are not sure? A. No. Q. Are you sure you voted for McSkimming? A. Well, I think I did. Q. Are you sure you did? A. Well, I think I am, I think I did, I do not know. There were so many names on the ticket you could hardly remember what you voted."

The defendant insisted that the poll books showing the returns of an election made by the officers under their oath import verity and cannot be overthrown by other than positive and affirmative evidence, and requested the court to strike out this witness's evidence, but the learned trial court ruled that it was a question for the jury. And, in its instruction to the jury, permitted them to find that this witness did vote for Dickmann and McSkimming, notwithstanding his own uncertainty in the premises, and that his vote was fraudulently counted for the other candidates. Unquestionably there are many cases in which a careful and conscientious witness will not state a fact positively, but will state that to the best of his knowledge and in his

opinion it was true, and often this character of evidence is more convincing to a jury, or the trial court, than the bald and unequivocal statement of a fact, especially where the witness states the concomitant facts and his reasons for his belief. But it seems to us that there is much force in the contention of counsel in the peculiar circumstances of this case. Here the ballot which the witness cast was not in evidence and the defendant was on trial for a serious crime, a crime involving a corrupt administration of a public office, and the only witness by which that offense, in the nature of the case, could be established, merely stated that he thought that he voted for a certain man, but was not positive whether he did or not, was not sure that he did, and did not know because there were so many names on the ticket that he could hardly remember how he voted. We think it would be a dangerous precedent to permit the judge of an election to be sent to the penitentiary for four years upon such testimony as this, and in our opinion the circuit judge should have sustained the motion to strike out this testimony as wholly insufficient to overthrow the presumption in favor of right action on the part of the judge of the election. It must be remembered that this is a charge of felony and the law requires it to be established beyond a reasonable doubt.

III. It is earnestly insisted that the State utterly failed to establish the charge in the indictment that either or any of the ballots alleged to have been cast for any one candidate was counted for *another candidate* as charged in the indictment.

Thus it is charged that William J. Robinson voted for William Wallace, but his ballot was fraudulently and feloniously counted for William S. Cowherd. The State to maintain this allegation did show there was no ballot or votes certified and returned as voted for Judge Wallace, but the only evidence that this ballot

was counted for Cowherd is an inference which the Attorney-General draws from the fact that Cowherd was credited with the same number of ballots that were certified to Democratic candidates who had no opposition, therefore it is argued he must have received credit for Robinson's ballot. This is a *non sequitur*. There is absolutely nothing to show that the judges counted this particular ballot for *Cowherd* and not for *Hadley*. It may be that Republican votes were counted for Cowherd and Democratic ballots for Hadley. While it may be argued that it is improbable that these defendants would have counted Republican ballots for the Democratic nominee or *vice versa,* it can be answered by the fact that if they were corrupt enough to miscount the ballots they were corrupt enough to fraudulently count any individual ballot for either of the candidates they might desire without regard to partisan bias or affiliation. The proposition after all leads us into a field of speculation, and results not in proof beyond a reasonable doubt, but in a probability, surmise or suspicion, neither of which will satisfy the demand of the law that defendant's guilt must be established beyond a reasonable doubt. Can the charge that Robinson's ballot was counted for Cowherd be treated as surplusage? The rule on this point would seem settled. Says Bishop in his New Criminal Procedure, section 485: "If a necessary allegation is made unnecessarily minute in description, the proof must satisfy the descriptive as well as the main part, since the one is essential to the identity of the other." This doctrine is illustrated by State v. Samuels, 144 Mo. 68, in which the indictment charged that a certain order was uttered "to one Walter Robinson with intent him, the said Walter Robinson, then and thereby to injure and defraud." The statute then (and now) in force provided that "it shall be sufficient in any indictment for any offense where an intent to injure, cheat or defraud shall be necessary to constitute the offense, to allege

that the defendant did the act with such intent, without alleging the intent of the defendant to be, to injure, cheat or defraud any particular person,'' etc.    [R. S. 1889, sec. 3983; R. S. 1899, sec. 2403.]  It was held necessary to prove the charge as laid and that the allega- tion that the altering was done with intent to cheat or defraud Walter Robinson, while unnecessary, yet being alleged, became descriptive and essential to a convic- tion.    [State v. Johnston, 6 Jones Law (N. C.) 485; John v. State, 24 Miss. 569; Com. v. Harley, 7 Met. 506; State v. Copp, 15 N. H. 212; Com. v. Luscomb, 130 Mass. 42; U. S. v. Porter, 3 Day 283.]

It is well to note that the distinction is always made between allegations which are necessary but un- necessarily particular and minute, and  allegations neither essential to the charge nor descriptive or limit- ing that which is essential.    [State v. Meyers, 99 Mo. 107; State v. Sakowski, 191 Mo. 635.]

The grand jury having charged not only that Rob- inson's vote was cast for Wallace proceeded to charge specifically that it was counted for Cowherd and by so doing made it an essential element of the offense to show it was counted for Cowherd.

IV.    Finally counsel for defendant assigns as re- versible error misconduct of the circuit attorney in his closing address to the jury in stating to them: ''If they [the accused and his counsel] have any doubts about what was in the ballots, let them open them up, let them bring them into court and place them in the hands of this jury and let it be conclusively determined.''  To this statement counsel for defendant at the time objected and saved his exceptions and asked that the circuit attorney be rebuked.    Thereupon the court remarked to the circuit attorney (Mr. Sager): '' You know that nobody can bring those ballots here under the present condition of affairs and you ought not to hold defendant responsible for what he cannot do. Pro-

ceed with the argument of the case under the instruc-
tions and evidence before the court." By Mr. Sager:
"It has been stated here that in this case an applica-
tion for a writ of prohibition was filed." By Mr.
Bishop: "This defendant had no more to do with it
and Mr. Sager knows it, than your honor." The
Court: "I have instructed Mr. Sager to proceed with
the argument of this case on the evidence and instruc-
tions and not outside matters." The defendant was
thus charged before the jury in a closing argument
by the State, with the duty of producing the ballots
and exhibiting them to the jury and also with having
obtained a prohibition against the production of the
ballots, although there was no evidence that he had
anything to do with obtaining the prohibition. That
the circuit attorney in calling upon the defendant and
his counsel to produce the ballots was guilty of a grave
breach of the proprieties, there can be no doubt in our
opinion. It was not the defendant's duty to produce
the ballots, neither had he any power, as counsel well
knew, to produce them. Moreover, defendant had tak-
en no action to prevent the State from endeavoring to
produce them. Such a demand upon the defendant in
the circumstances was most hurtful. Although counsel
for defendant protested and objected to this statement,
the court did not instruct the jury to disregard it, but
simply told the circuit attorney that he knew nobody
could bring the ballots and he ought not to hold de-
fendant responsible for what he could not do. A de-
fendant on trial for his liberty is entitled to the full
protection of the court. The conduct of the circuit at-
torney called for a stern rebuke and the jury at least
should have been warned to not regard the statement.

The defendant was not required to prove his inno-
cence. It devolved upon the State to establish his guilt
of the crime charged beyond a reasonable doubt. By
the law of this State the defendant in a criminal cause
may decline to testify in his own behalf and counsel

for the State are forbidden by express statute to refer to or comment upon his failure to testify or to draw any unfavorable inference from his failure to testify. [R. S. 1899, sec. 2638.]    In State v. Moxley, 102 Mo. l. c. 393, counsel for the State in his argument said: "They have offered not a word to explain or show how that woman came to her death.    Not a neighbor was put upon that stand, if I am right, man, woman or child, kinsman or stranger, to show what *he* said had caused her death. . . .   We say that common honesty, common decency, requires at the hands of that man, when he sees his neighbors, to tell how she came to her death!"   This court said in regard to the conduct of the prosecuting counsel:  "This language of which complaint is made was simply an adroit and insinuating attempt, indirectly to accomplish what could not have been accomplished by a direct statement. The statute does not permit such evasions of its manifest purpose.   Besides, the language used was not the law." Now, what difference in principle is there between a statement by counsel that the defendant had not produced any of his neighbors to testify as to what he had said was the cause of his wife's death, and the statement of the circuit attorney in this case, that, if the accused "had any doubt about what was in the ballots, let him open them up, let him bring them into court and place them in the hands of the jury?"   It was a demand upon the defendant to produce testimony to establish his innocence, and a demand with which counsel knew defendant could not comply.   In what does it differ from a demand by the prosecuting attorney that defendant take the stand and give the jury his testimony, if he desires to be acquitted, in a case in which he has not offered himself as a witness, and if he does not, rest under the imputation that he is blocking the administration of justice?   Charged as the defendant was with miscounting and with a fraudulent return of these ballots, what more hurtful reference

could have been made to his failure to produce them, and how could the jury have been more forcibly impressed with the idea that if defendant was not guilty as charged, he would have produced the ballots? And yet, counsel knew the defendant not only could not do so but was under no legal obligation to do so. Loath as this court is to reverse a judgment upon argument of counsel, as much as we are disposed to allow full liberty of argument, we have always held that statements of facts not in evidence are inexcusable, and if prejudicial constitute reversible error, and particularly misstatements of the law. Here the statement was not the law, and counsel was not rebuked nor the jury instructed to disregard his said statement. In our opinion the wrong done was not cured by the colloquy between the circuit court and counsel, but the poison was left in the minds of the jury and this conduct of the circuit attorney was reversible error. [Evans v. Trenton, 112 Mo. 390; State v. Weaver, 165 Mo. 1; State v. Bobbst, 131 Mo. l. c. 338, 339; State v. Mitchum, 11 Ga. l. c. 634; Tucker v. Henniker, 41 N. H. 317.]

For the errors above noted the judgment is reversed and the cause remanded for a new trial in accordance with the views herein expressed. All concur.