**STATE of Missouri, Respondent,**

v.

**Donald R. KINER, Appellant.**

No. 53735.

Supreme Court of Missouri,
Division No. 1.

June 9, 1969.

John C. Danforth, Atty. Gen., Jefferson City, and John R. Hutcherson, Special Asst. Atty. Gen., Kansas City, for respondent.

Lewis F. Randolph, Jr., St. Joseph, for appellant.

HIGGINS, Commissioner.

Appellant was convicted by a jury of fraud by a judge of an election, a felony, Section 129.490, V.A.M.S., and his punishment was assessed at a fine and imprisonment in the county jail. Sentence and judgment were rendered accordingly.

Appellant tacitly concedes that the state made a submissible case in support of the indictment by which he was charged, i. e.: "that * * * on or about the 2nd day of August, 1966, in the County of Buchanan, State of Missouri, an election was held under the Constitution and laws of the State of Missouri for the purpose of electing state and county officials as provided by law, said election then and there being a primary election for the purpose aforesaid; * * * that one Don Kiner, who had been selected, appointed and qualified according to law to serve as Judge for said primary election for Precinct D of the Fifth Ward, * * * did then and there illegally, wilfully, fraudulently and feloniously change the true and lawful result of said election * * * by counting ballots for certain candidates, when in fact they were cast for other candidates, to-wit:

"In the race for Presiding Judge of the County Court nineteen (19) votes were counted for Ben Gordon and forty (40) for James F. Welsh * * * when in fact the number of ballots actually cast for candidates in the said contest were thirty-eight (38) for Ben Gordon and nineteen (19) for James F. Welsh;

"In the race for Committeeman of the Fifth Ward fourteen (14) votes were counted for H. W. Dougan and forty-six (46) for Walt Smith * * * when in fact the number of ballots actually cast for candidates in the said contest were twenty-five votes for H. W. Dougan and twenty-three (23) for Walt Smith; contrary to the form of the Statutes, etc."

On August 2, 1966, appellant served as a judge of election at Precinct D of the Fifth Ward in St. Joseph, Buchanan County, Missouri. He worked as a "returning judge" in that he removed ballots from the ballot box and read the votes for each candidate. Two tally clerks, Baines and McCarthy, tallied the votes as appellant read them and their tallies agreed. Another judge, Davis, took the ballots from appellant after appellant read them to the clerks and strung them on a wire. The agreed tally of votes was certified and it, the tally sheets, ballots, and other supplies were delivered to the county clerk by appellant using a bag designated for that purpose.

In March, 1967, the tally sheets, ballots and bag were delivered to the grand jury and were in evidence and examined by the trial jurors. In particular, the jurors examined the tally sheets reflecting the votes tallied pursuant to their reading by appellant, and the ballots reflecting the votes as actually cast by voters at Precinct D, Ward 5.

Appellant charges the indictment was defective "in that same fails to charge an offense * * * and further fails to inform defendant of the nature and cause of the accusation against him."

Section 129.490, supra, provides: "If any judge or clerk of any election authorized by law, * * * shall in any manner illegally, willfully and fraudulently change or attempt to change * * * the true and lawful result of any election, by any act to be done either before, at the time of or after such election, by a wrong count of the ballots, * * * or in any other manner * * *, shall, upon conviction, be punished by imprisonment in the penitentiary not exceeding five years, or by imprisonment in the county jail not less than three months, and by a fine not less than one hundred dollars, or by both such fine and imprisonment, * * *."

Comparison of the indictment and statute shows that the indictment follows the language of the statute; that it is "a plain, concise and definite written statement of the essential facts constituting the offense charged," Criminal Rule 24.01, V.A.M.R., and, irrespective of the lack of a request for a bill of particulars, it does "inform the defendant of the particulars of the offense sufficiently to prepare his defense," Criminal Rule 24.03, V.A.M.R.

Appellant cites State v. McGrath, 228 Mo. 413, 128 S.W. 966, and State v. Buchfelder, 231 Mo. 55, 132 S.W. 229, which hold only that indictments for similar felonies are insufficient if the alleged criminal acts are not also charged to have been feloniously committed. Examination of the indictment of appellant Kiner reveals an allegation that he did "feloniously change the true and lawful result of said election."

■ Appellant charges also that the indictment is defective for duplicity in that it "attempts to charge two separate and distinct crimes in one count," and that the court erred in failing to require the state to elect.

The indictment charges that appellant did feloniously change the result of an election, a single act proscribed by the statute, by two instances of counting ballots for certain candidates when they were actually cast for other candidates. Thus, the indictment is similar to the indictment for perjury which joined four alleged perjured statements in one count and withstood a charge that it was duplicitous and multifarious for that reason. State v. Brinkley, 354 Mo. 337, 189 S.W.2d 314, 320[6].

■ Appellant contends the court erred in permitting the prosecuting attorney to ask questions of jurors and receive answers on voir dire over defendant's objections. The record shows that prospective juror Benton was asked by the prosecuting attorney: "And if after hearing all the testimony as it comes from the witness stand and the Judge's instructions on the law, if the state proves to you beyond a reasonable doubt as to the guilt of the defendant, is there any reason you could not and would not vote to find him guilty?

"MR. RANDOLPH: I object to that question. It calls for a juror to precommit and prejudge this case without the full benefit of all the evidence and all the instructions and argument of counsel. It calls on him to speculate on what he would do in a certain situation.

"THE COURT: Overruled. * * *

"A All I could do is what I honestly felt about it. * * *"

Similarly, the prosecuting attorney questioned prospective juror Nurski: "And if the State proves to you beyond a reasonable doubt as to the guilt of the defendant, could you and would you vote to find him guilty?" Mr. Randolph made the same objection and, upon its overruling by the court, Mr. Nurski answered: "Yes, I could —beyond a reasonable doubt. Q (by the prosecutor) You could and would? A Yes."

Another example occurred during examination of prospective juror Brooks. The same question was put to him; Mr. Randolph renewed his objection and, upon its overruling, the matter proceeded: "MR. BROOKS: * * * You want to know how I would vote? Q I ask you, could

you and would you vote to find him guilty? A Yes, if it was proven he was guilty."

When the same question was put to prospective juror Goerke, she answered "Yes" over appellant's objection, and the same circumstances existed with prospective juror Miller. The same question eliciting the same answer was put also to prospective jurors Gardner, Lamb, Dilley, Plummer, Richey, Kellison, and Followell. Appellant abandoned his objections after the first five instances in which his objections were overruled.

State v. Katz Drug Co., Mo., 352 S.W.2d 678, asking virtually the same question and receiving an affirmative answer over less specific objection required reversal and remand for a new trial. The questions in that case which elicited affirmative answers were along this line: " 'Now, if I prove to your satisfaction and beyond a reasonable doubt (the charge) * * * and if the Court instructs you that that is a violation of the law, will you convict?' This was an improper attempt to commit jurors before they had heard evidence, instructions of the court or argument of counsel. * * * '[C]ounsel has no right on voir dire to cause the prospective jurors to pledge or speculate as to their action in certain contingencies which may later occur or arise during trial. State v. Pinkston, * * * [336 Mo. 614, 79 S.W.2d 1046] * * *.' " State v. Katz Drug Co., supra, l. c. 684–5[4].

Respondent argues (without citation) that the state was asking only whether prospective jurors would follow the law and the evidence and that the error was cured by converse examination by appellant without objection by respondent. It is obvious that the state's questions were not the legitimate inquiry whether a juror would follow the law and the evidence, and the record shows that the converse examination was employed as a result of the court's erroneous rulings on appellant's objection. For example, in appellant's examination of prospective juror Goerke appellant's counsel stated: "I must now be forced to ask the reverse of that (the state's) question. If the state fails in this task * * * to show guilt beyond a reasonable doubt, would you vote for acquittal?"

It is not necessary to discuss other alleged trial errors such as failure to dismiss after opening statement of the prosecuting attorney, late endorsement of witnesses, admission of evidence, and instructions, because the same circumstances may not exist upon retrial and counsel and court will have had the benefit of these briefs on those issues.

■ One further charge of error deserves discussion because its circumstances probably will exist upon a second trial. Appellant complains that the state should have been required to prove that defendant was duly appointed and qualified to serve as an election judge. Appellant's argument is that there is no written record or order of appointment; however, neither of the statutes cited by him, Sections 111.270 and 111.320, V.A.M.S., requires a written order of appointment and, in any event, appellant was a *de facto* judge, State v. Briggs, Mo., 435 S.W.2d 361, 363[4], and no one is questioning his appointment or qualification.

For the errors in connection with the voir dire examination, the judgment is reversed and the cause remanded.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the Court.

All of the Judges concur.