DICK (a slave) *v.* THE STATE, 30 Miss. Rep., 631.

### RAPE.

Where a witness for the state was allowed to testify that the accused had confessed to him that he was guilty of the offense charged against him, and that he had heard him soon afterwards, on the same evening, make other confessions to other persons, the accused has a clear right to cross-examine the witness on that subject, such examination being material to the issue to be tried by the jury.

In an indictment against a slave for an attempt to commit a rape upon a free white woman, it is unnecessary to state that such slave is a negro or mulatto,—such an averment would be immaterial, and need not be made, but if made, it must be proved.

The rule is clearly settled that it is incumbent on the prosecutor to prove on the trial, every fact and circumstance stated in the indictment, material or necessary to constitute the offense charged ; but those allegations in the indictment which are not necessary ingredients in the offense, may be rejected as surplusage, and need not be proved.

If an averment may be entirely omitted without affecting the charge against the prisoner, it may be considered as surplusage, and be disregarded in the evidence. This rule applies to averments which are not only unnecessary in themselves,

but foreign to the charge ; but it has not been held to apply to allegations which might have been properly dispensed with, but being inserted in the indictment, are descriptive of the identity of that which is legally essential to the charge.

The averment that the accused was a negro was wholly unnecessary, but having been made, it was descriptive of the person of the prisoner, and became a part of his identity, as much so as the name by which he was indicted.

Error to Pontotoc circuit court.   Scruggs, J.

*J. F. Cushman,* for plaintiff in error.

*D. C. Glenn,* attorney general.

Smith, C. J. :

This was an indictment for an attempt, by a slave, to commit a rape upon a free white woman, upon which the prisoner was convicted.

A motion was entered for a new trial, which was overruled, and thereupon a bill of exceptions was taken, setting out the evidence, the action of the court in regard to the introduction of testimony, and the charges given or refused.

Several exceptions are taken to the judgment. We deem it, however, unnecessary to notice only those objections, which, in our opinion, are well founded.

A material part of the evidence adduced in support of the prosecution, was the confessions of the prisoner, as testified to by the witness, Murphy. This witness testified that when the accused was brought before him, as a justice of the peace, on warrant for examination, he made known to him the charge against him ; and asked him whether he was guilty ; and that he acknowledged that he was guilty. The witness also stated that he heard the accused afterwards, and during the same evening, make other confessions to other persons, which was soon after those made to the witness. The accused, by his counsel, proposed to cross-examine the witness in regard to the confessions made to other persons ; but the court refused to permit such examination ; and the prisoner excepted.

It is manifest that the examination proposed was material to the issue to be tried by the jury. It may have been important to the prosecution. The witness had first deposed to confessions made to himself ; and in addition, had stated that the accused had shortly afterwards made other confessions to different per-

sons.　If the confessions made to other persons than the witness, were to the same effect as those made directly to the witness, his confession first made, the particulars of which were delivered to the jury, would have been corroborated.　They would thus have been placed in possession of more satisfactory evidence of the guilt of the prisoner.　On the other hand, it was clearly the right, and might have been of the greatest importance to the prisoner, to cross-examine in relation to those confessions—an imperfect statement, and reference to which, had been made to the jury.　That statement or reference, as general as it was, undoubtedly was calculated to injure the prisoner.　The jury could have looked upon the confession stated by the witness to have been made to other persons, in no other light than as a deliberate repetition and re-affirmation of the confessions first made to the witness.　But if these "other confessions" were different in any material respect from those first made directly to the witness, as might possibly have been the case, the accused was clearly entitled to bring out, by cross-examination, every circumstance that was calculated to destroy or weaken their force as confessions, or to show that those confessions were incompetent evidence against him.

We think the court erred also in refusing the sixth instruction asked for the prisoner.

In that instruction, the prisoner requested the court to charge, that if the jury believed from the evidence, that the prisoner was a mulatto slave and not a negro man slave, as charged in the indictment, they should acquit him.

The provision of the statute is that "if any slave shall attempt to commit a rape upon a free white woman," etc., Hutch. Dig., 521, § 55.　If the attempt to commit a rape upon a free white woman, etc., is made by a slave, the offense created by the statute is complete, whether the slave be a negro or mulatto.　It was hence unnecessary to charge that the slave alleged to have committed the offense, was either a negro or mulatto. The averment was immaterial; and the question is, whether it is of that class of unnecessary or immaterial averments, which may be rejected as surplusage and therefore need not be proved on the trial.

The general rule, in reference to the proof of indictments, is well understood. As laid down by Archbold, it is incumbent on the prosecutor to prove at the trial, every fact and circumstance stated in the indictment, which is material, or necessary to constitute the offense charged. On the other hand, every fact and circumstance stated in the indictment, which is not a necessary ingredient in the offense, may be rejected as surplusage, and need not be proved at the trial. Archl. Cr. Plead., 39.

However clear and definite general rules may be, difficulty is frequently encountered in applying them to particular cases. Hence, it is often a nice point to determine whether an allegation in an indictment should or should not be totally disregarded in the proof. Phillips, in his work on Evidence, says : "If an averment may be entirely omitted, without affecting the charge against the prisoner, it will be considered as surplusage, and may be disregarded in the evidence," vol. 1., p. 500. This rule, as laid down by Phillips, has been held uniformly to apply to averments, which are not only unnecessary in themselves, but foreign to the charge. The cases of The King v. Minton, cited in 2 East, Pleas of the Crown, 1021 ; and Rex. v. Holt, 5 T. R., 446, are referred to, as illustrative of this principle. But it has never been held to apply to allegations, which, although they might, with propriety, have been dispensed with, but being inserted in the indictment, are descriptive of the identity of that which is legally essential to the charge. 3 Phill. Ev. 668 (Hill & Cow. Ed.) ; Archb. Cr. Pl., 101 ; United States v. Porter, 3 Day, 286 ; 24 Miss. Rep., 578. Thus, on an indictment under the statute of 57 Geo. III., ch. 90, for being armed with intent to steal game, in a certain wood called the "Old Walk," in the occupation of a person named in the indictment, it appeared that the wood had never been called the "Old Walk," but always the "Long Walk;" and it was holden, that, although it was unnecessary to state the name of the close, where the occupation was stated, yet being alleged, it was material, and could not be rejected. Rex v. Owen, 1 Moody, C. C., 118, 303 ; Rex v. Craven, 1 Russ. & Ry., 14 ; 2 Stark Ev., 1531.

The averment, that the prisoner was a negro, was in no respect an ingredient in the offense charged. It might therefore,

with propriety, have been omitted. But having been inserted, it was descriptive of the person of the prisoner; it became a part of his identity; manifestly as much so as the name under which he was prosecuted. The averment was connected with and descriptive of that which it was essential to establish by the evidence, that is, the identity of the party charged.

The rule of the English courts on this subject was clearly re cognized by this court, in the case of John, a slave, *v.* The State, above cited. Applying it to the case at bar, we think the court erred in refusing the instruction.

Judgment reversed, and cause remanded for a new trial.