### Ennis Simer v. The State.

#### No. 533.   Decided May 31, 1911.

**1.—Slander of Female—Variance.**

Where, upon trial of slander of a female, there was a variance between the allegations in the indictment and the proof as to the alleged slanderous language, the conviction could not be sustained.

**2.—Same—Case Stated.**

Where the indictment charged the slanderous language to be that Cleveland McBride and Will Canterberry had knocked the said Nona Maynard up and had left the country and that Oscar McBride was keeping them posted, and the testimony was that Cleveland McBride and Will Canterberry had knocked the Maynard girls up and had left the country and that Oscar McBride was keeping them posted, the variance was fatal. Following Conley v. State, 14 Texas Crim. App., 222, and other cases. Prendergast, Judge, dissenting.

Appeal from the County Court of Stephens. Tried below before the Hon. W. C. Veale.

Appeal from a conviction of slandering a female; penalty, a fine of $100.

The opinion states the case.

*Stubblefield & Patterson* and *W. P. Sebastian,* for appellant.—On question of variance: Sue v. State, 52 Texas Crim. Rep., 122, 105 S. W. Rep., 804; Porter v. State, 107 S. W. Rep., 818; Roberts v. State, 100 S. W. Rep., 150; Smith v. State, 73 S. W. Rep., 401; Stayton v. State, 46 Texas Crim. Rep., 205, 78 S. W. Rep., 1071; West v. State, 44 Texas Crim. Rep., 417, 71 S. W. Rep., 967; Barnett v. State, 35 Texas Crim. Rep., 280, 33 S. W. Rep., 340; Rogers v. State, 30 Texas Crim. Rep., 462, 17 S. W. Rep., 548; Berry v. State, 27 Texas Crim. Rep., 483, 11 S. W. Rep., 521; Frisby v. State, 26 Texas Crim. App., 180, 9 S. W. Rep., 463.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, Judge.—In this case the defendant was indicted, charged with the offense of slander, and upon a trial he was convicted and his punishment assessed at a fine of $100 and ten days imprisonment in the county jail.

While the evidence would abundantly support a charge that defend-

ant uttered a slander in regard to the young lady, yet defendant insists that the allegations in an indictment, and the proof, must correspond, and there being a variance between the proof and the allegation that this cause must be reversed. The indictment charges that defendant "did then and there unlawfully, orally, falsely and maliciously and falsely and wantonly impute to one Nona Maynard, then and there an unmarried female in this State, a want of chastity in this, to wit: He, the said Ennis Simer, did then and there, in the presence and hearing of Jerry Christesson, falsely, maliciously and wantonly say of and concerning the said Nona Maynard, in substance, that Cleveland McBride and Will Canterberry had knocked the said Nona Maynard up and had left the country, and that Oscar McBride was keeping them posted. The meaning of said statement was, and the meaning intended to be conveyed to the said Jerry Christessen, was that the said Cleveland McBride and the said Will Canterberry had been having sexual intercourse with the said Nona Maynard, and that one of them had impregnated the said Nona Maynard."

Jerry Christesson testified: "I had a conversation with the defendant Ennis Simer. We were talking about boys going with the girls, and the conversation finally drifted to the Maynard girls, and the defendant told me that Cleveland McBride and Will Canterberry had knocked the Maynard girls up and had left the country, and that Oscar McBride was keeping them posted. This is the only conversation of the kind he ever had with me or in my presence."

In his special charges Nos. 1 and 4 defendant requested charges on his theory of the case, which were refused by the court. While the pleader need not have made such specific allegations, yet, having made the allegations above quoted, it was incumbent on the State to make proof of the allegations as alleged. In the testimony of the witness quoted, it can not be construed into a statement that both McBride and Canterberry had had sexual intercourse with the young lady, but the testimony negatives such conclusion. If they were acting together, it would not be deducible that they both had the same girl when two girls were referred to. Again the words were "Maynard girls," and not Nona Maynard. In cases of slander this court has held that the language alleged in the indictment must be supported by the testimony, and proven substantially, and proving words of similar import will not suffice. This, so far as we can find, has been the unvarying rule in this court. In Conlee v. State, 14 Texas Crim. App., 222, Judge Willson, speaking for the court, says:

"An information charged the defendant as follows: 'That one John Conlee did orally, falsely and maliciously impute to Miss Florence Bullock a want of chastity, in this, that the said John Conlee did then and there orally, falsely and maliciously say to one Gus Pitts that he, the said John Conlee, had had carnal knowledge of her, the said Miss Florence Bullock, and that she, the said Miss Florence Bullock, was of bad character.'

"To support this charge the State proved by Gus Pitts the language used by defendant, which was as follows: 'She would have been a nice girl if he (defendant) had not done what he had done to her, and if I (meaning witness) did not believe it, meet him at the gin house that night and he would prove it.' The witness stated that the above language was the only statement made or words used by defendant to him about Miss Florence Bullock; that defendant did not state to him that he, defendant, had had carnal knowledge of Miss Bullock. Defendant objected to this evidence because it was not in substance the slander charged in the information, and his objection being overruled, he excepted, and insists that the conviction should be set aside, because the evidence does not prove the charge as alleged in the information.

"It has been held by this court that in a prosecution for this offense the information or indictment must set forth substantially the language, or whatever else, which constitutes the imputation of a want of chastity. (Lagrone v. The State, 12 Texas Crim. App., 426; Melton v. The State, id., 552.) It being necessary, therefore, that the slanderous words should be *substantially* alleged, it follows that they must be *substantially* proved. This means that the essential, important, material portion of the slander as alleged must be proved. All the words alleged need not be proved, but enough of them must be proved as laid to constitute the offense. It will not do to allege one imputation and prove another. Proof must correspond with allegation. This is an elementary rule governing in criminal as well as in civil actions, and can not with safety and justice be disregarded. It is unnecessary to cite authority in support of such ancient and universally recognized principles as these.

"In the case before us we are compelled, reluctantly, to hold that the language of defendant as proved was not even substantially the language charged in the information. It was entirely different, containing none of the essential, important or material words alleged to have been uttered by the defendant. On the contrary, it was proved that the alleged words were not uttered by the defendant. However basely the defendant may have slandered the young lady, he did not slander her in the language set out in the information. We must reverse the judgment and remand the cause, for the reason that there is a fatal variance between the slander as alleged and the language proved."

In the case of Barnett v. State, 35 Texas Crim. Rep., 280, Judge Hurt, speaking for the court, says: "The main question in this case is, whether the proof of words with precisely the same meaning, and no other, will suffice. The words used, to wit, 'I've f——d her,' have no other meaning than those alleged, namely, 'did have carnal knowledge.' So the question is clearly presented, which is, will proof of words of the same or similar import satisfy the allegation? We have held, and still hold, that it will not. Townsend, on Slander, says: 'The words alleged can not be proved by showing that the defendant

published the same meaning in different words, even if equivalent and of similar import.' "

In West v. State, 44 Texas Crim. Rep., 417, Judge Davidson, speaking for the court, says: "The question of variance is relied on, and we believe it exists between the proof and the allegations. The indictment alleges appellant said 'he saw Emma Nelson having intercourse with Carl,' meaning Carl Nelson, her brother. His statement to Carsey was 'that Carl and Emma Nelson came out in the pasture, and he done it to her right there. He played with her about half an hour.' He never used the word 'intercourse,' but said to me, as I have testified, that 'they came out in the pasture, and he done it to her right there.' Now, if there is a variance, it is between the statement alleged, that Carl Nelson had intercourse with his sister, Emma, instead of the language that he came out in the pasture and 'done it to her right there.' It seems this constitutes a variance."

In Rogers v. State, 30 Texas Crim. App., 463, Judge White, speaking for the court, holds that where the indictment alleged "Marion Rogers had met Sarah Lee Rimmer, in the nighttime, in the bushes, and did then and there have carnal intercourse with her," is not supported by proof that defendant said: "He would meet Sarah Lee Rimmer there (meaning the well) at night and 'dick' her, meaning that he would have carnal knowledge of her," and reversed the case because of this variance.

In the case of Hasley v. State, 57 Texas Crim. Rep., 400, Judge Ramsey, speaking for the court, holds: "Appellant in this case was convicted of slander in falsely imputing to the woman named in the indictment a want of chastity. The language attributed to him is thus stated in the indictment: 'Did then and there unlawfully, falsely and maliciously, and falsely and wantonly, orally impute to ——— ———, then and there a married female in this State, a want of chastity, in this, to wit: He, the said Tobe Hasley, did then and there, in the presence and hearing of Dr. T. G. Fuller, say that he, the said Tobe Hasley, had had carnal intercourse with the said ——— ———, and that she, the said ——— ———, had on diverse occasions met him, the said Tobe Hasley, at night at the back of the residence of her husband, meaning that she had met him for the purpose of having carnal intercourse with him, the said Tobe Hasley, and that he had had carnal intercourse with her.' The language proved by Dr. Fuller was in substance to the effect that 'a person could have a fine time there, referring to the woman named.' Again, he says, 'I asked him how he managed to see this lady, and he said that she would meet him at the back of the house—back of the patch there is a place of woods.' This witness further made this statement: 'He said that he had been having a time with her.' This witness, as other witnesses, was permitted to testify what they understood to be meant by the terms 'having a good time' or 'a time with her.' This testimony was objected to as being a variance in the language proven and that charged in the in-

dictment. The language of the indictment is that appellant stated that he had had carnal intercourse with the woman named. It may be, and doubtless is, true that he meant to imply by his statement that he had been having a good time with her, that the person to whom he made such statement should understand that he had been having carnal intercourse with her. The language, however, is not the same, nor is this the inevitable or clear meaning of it. There is no charge that he used this particular language in the indictment, but the language is that he had been having carnal intercourse with the person named. It is well settled in this State that slanderous words as substantially alleged must be substantially proved. Conlee v. State, 14 Texas Crim. App., 222; Frisby v. State, 26 Texas Crim. App., 180; Riddle v. State, 30 Texas Crim. App., 425, and Rogers v. State, 30 Texas Crim. App., 462, and Berry v. State, 27 Texas Crim. App., 483." And he reverses and remands the case because of this variance.

In Tippens v. State, 43 S. W. Rep., 1000, Judge Henderson, speaking for the court, holds: "The indictment alleged that 'W. A. R. Tippens . . . did orally, falsely and maliciously and wantonly . . . say of and concerning Mary L. Rice that she was not a decent lady (meaning that she was a whore.)' " The testimony was that defendant had said: "Mary L. Rice is not a decent lady." The indictment does not allege that he stated Miss Rice was a whore, but by way of innuendo this was alleged as a conclusion from what he said. The variance is held to be fatal.

In Frisby v. State, 26 Texas Crim. App., 180, where the language alleged is: "That said M. was unchaste and not virtuous, and he (defendant) could at any time have carnal intercourse with her if an opportunity presented itself," the court says he is nowhere shown to have said concerning M., that she was "unchaste and not virtuous," and this is not proven by a declaration that the "whole Miller family were whores." Because of this variance the case was reversed.

In Berry v. State, 27 Texas Crim. App., 483, this court held: "It is charged in the complaint and information that the defendant slandered Isabella Helm, an unmarried female, by saying that she 'was in the family way, meaning thereby that she was with child, and that he believed her brother, F. B. Helm, was the father of the child.' There is no evidence proving that he used the precise language above stated. He said on one occasion that 'he had seen Isabella Helm at home, and if there was not something wrong with her his eyes had fooled him; that he saw enough to convince him that there was something wrong with her; that if his eyes had not deceived him worse than they ever had before, she was in that condition.' On another occasion he was asked by a neighbor and brother in the church if he had heard any bad reports about Isabella Helm, and, if so, what the reports were. He answered that it was *reported* that she was in the family way, and that it was *reported* that her brother Frank was the other party concerned." The slander proved is not the slander alleged, he says, and reversed

the case. See also Flournoy v. State, 51 Texas Crim. Rep., 29, and cases cited in all these cases.

Again, the indictment alleging by way of innuendo that both parties had carnal intercourse with the lady named, it became necessary to prove the allegation, and the proof does not sustain this allegation. It may have been an unnecessary allegation, but the words as used became descriptive of the offense, the slander being based thereon, and must be proved as alleged. For a compilation of the authorities on this question see Robinson v. State, 132 S. W. Rep., 944. In the case of Warrington v. State, 1 Texas Crim. App., 168, it is said: "The distinction between variance and surplusage is laid down with great perspicuity by Mr. Justice Story in the United States v. Howard, 3 Sumn., 14, 15. He says: 'Two questions generally arise. The first is, What allegations must be proved and what may be disregarded in evidence? The second is, What is sufficient proof of allegations which can not be disregarded in evidence? The former includes the consideration of what constitutes mere surplusage in an indictment; the latter, what constitutes variance. Mere surplusage will not vitiate an indictment, and need not be established in proof. The material facts which constitute the offense charged must be stated in the indictment, and they must be proved in evidence. But allegations not essential to such a purpose, which might be entirely omitted without affecting the charge against the defendant, and without detriment to the indictment, are considered as mere surplusage, and may be disregarded in evidence. But no allegation, whether it be necessary or unnecessary, whether it be more or less particular, which is descriptive of the identity of that which is legally essential to the charge in the indictment, can ever be rejected as surplusage.'" 3 Sumn., 15.

" 'In still other words,' says Mr. Bishop, 'wherever there is a necessary allegation which can not be rejected, yet the pleader makes it unnecessarily minute in the way of description, the proof must satisfy the description as well as the main part, since the one is essential to the identity of the other.' 1 Bishop on Crim. Proc., sec. 485; and he cites United States v. Keen, 1 McLean, 429; The State v. Jackson, 30 Me., 29; United States v. Brown, 3 McLean, 233; United States v. Howard, 3 Sumn., 12; The State v. Noble, 15 Me., 476; Dick v. The State, 30 Miss., 631; United States v. Foye, 1 Curt., 364; Commonwealth v. Hope, 22 Pick., 1; Hill v. The State, 41 Texas, 253; Gorman v. The State, 42 Texas, 221; Collins v. The State, 43 Texas, 577.

"Mr. Wharton says: 'An allegation in an indictment which describes, defines, or limits a matter material to be charged, is a descriptive averment, and must be proved as laid.' 1 Whart. Am. Cr. Law, sec. 629."

In accordance with these decisions and the former holding of this court, this case is reversed and remanded because of the variance between the allegations and the proof.

*Reversed and remanded.*

PRENDERGAST, JUDGE (dissenting.)—From my conception of the facts and law of this case I think the court is in error in reversing and remanding it, and I am so thoroughly convinced that I am constrained to enter my dissent.

Notwithstanding the statement of the case in the opinion of the court, I think I can make the matter clearer by restating it from my standpoint, and which is unquestionably correct, from the record.

The gist of the allegation in the indictment is that the defendant Simer, "on or about December 15, 1907, in the presence and hearing of Jerry Christenson, said of and concerning Nona Maynard, in substance, that Cleveland McBride and Will Canterberry had knocked said Nona Maynard up and left the country, and that Oscar McBride was keeping them posted; that the meaning of this, and the meaning intended to be conveyed to Christenson, was that said Cleveland McBride and Will Canterberry had been having sexual intercourse with said Nona Maynard, and that one of them had impregnated her." The testimony of the said Jerry Christenson is literally as follows: "On December 12, 1907, at the residence of Valson Hodges, in Stephens County, Texas, I had a conversation with the defendant, Ennis Simer. We were talking about boys going with the girls, and the conversation finally drifted to the Maynard girls, and the defendant told me that Cleveland McBride and Will Canterberry had knocked the Maynard girls up and had left the country, and that Oscar McBride was keeping them posted. This is the only conversation of the kind he ever had with me or in my presence. Ennis Simer, the defendant in this case, had gone with Nona Maynard before that time. Cleveland McBride and Will Canterberry had also been going with the Maynard girls, but at this time both of these boys had left the country. We were alone in the seed house at Mr. Hodges' when this conversation occurred. No one was present but defendant and myself. The exact language used by the defendant, *as I remember it,* was: 'Cleveland McBride and Will Canterberry have knocked the Maynard girls up and have ·left the country, and Oscar McBride is keeping them posted.' After this statement he did not say anything else about the matter. He did not mention the given names of either of the girls, but used the expression 'the Maynard girls.' Mr. Maynard has two daughters, Nona and Maggie (Maggie Maynard is now Mrs. Dugan), and they were the only Maynard girls in the· country. Will Canterberry and Cleveland McBride had been going with Nona and Maggie Maynard, and had not gone with any other Maynard girls in that vicinity; in fact, I never heard of any other Maynard girls. I am sure that there is no other girls by that name anywhere in or near the neighborhood where Ennis Simer or Nona and Maggie Maynard reside. Nona and Maggie Maynard are in attendance on the trial of this case, and are the same Maynard girls that the defendant referred to when he made the statement quoted by me."

The balance of the testimony of this witness shows that he was

twenty years old; that he had known the defendant about two years, and had known Maggie and Nona Maynard about fifteen years; that he lived about one mile from where the Maynard girls lived and about four miles from where the defendant lived. Nona Maynard is about eighteen years old, an unmarried woman, and lives in Stephens County, where she has lived for the past fifteen years.

In cases of this character, under the statute under which this prosecution was had (Crim. Code, art. 750), all the authorities hold that it is only necessary to allege the *substance* of what was said, and also that it is only necessary to prove *substantially* what is alleged and what was said. Frisby v. State, 26 Texas Crim. App., 180; Conlee v. State, 14 Texas Crim. App., 222; Riddle v. State, 30 Texas Crim. App., 425; Rogers v. State, 30 Texas Crim. App., 462; Berry v. State, 27 Texas Crim. App., 483; Humbard v. State, 21 Texas Crim. App., 200; Hasley v. State, 57 Texas Crim. Rep., 400. Other cases might be cited to the same effect, but it is unnecessary.

In slander, charged to have been committed orally, it would be requiring too much to be compelled to allege and prove the exact language uttered, because however accurate the mind and retentive the memory of the witness, it is unreasonable to require him to reproduce the exact language which was uttered, or else fail in a conviction. Hence, all of the authorities hold that it is essential to allege *substantially* only, and to prove only *substantially* the words which were uttered. It is not like libel or forgery, or written slander under said article, where the language is in writing, for in such cases it is not the least difficult to reproduce the exact written language or the writing itself, and necessarily there must be a difference, and was so contemplated and intended by the law where only words were uttered orally.

There are but two purposes, shown by all of the authorities, why the allegations and proof should be substantially the same in charges of oral slander. One of these is, that the defendant may have notice of what he is to meet on the trial; the other is, to enable him to successfully allege and prove former jeopardy in cases of a second or other prosecution.

Now let us compare the language alleged in the indictment with that proven on the trial. The testimony above quoted (and this was nowhere disputed in the record, but the other witnesses confirmed it), shows that the language uttered by the defendant was to Jerry Christenson. It gives the date, the place, and identifies the two girls, and excludes any and all others. It also shows that there was no other conversation about or pertaining to the matter had between the witness and the defendant at any other time or place about either or both of the Maynard girls. The indictment fixes about the same date, in the same county, and the conversation between the appellant and the said witness, and gives the precise language charged in the indictment, except that wherein the indictment uses the name "Nona May-

nard" the language proved is "the Maynard girls," and the proof, as stated above, unquestionably fixes that Nona was one of these "Maynard girls." In the indictment it is, "Cleveland McBride and Will Canterberry had knocked the said Nona Maynard up and had left the country, and that Oscar McBride was keeping them posted." In the proof it is, "Cleveland McBride and Will Canterberry have knocked the Maynard girls up and have left the country, and Oscar McBride is keeping them posted." As I see it, no reasonable mind could be misled by the slight variance between the name alleged and the names proven, and no mind could doubt that the "Maynard girls" proven included the name alleged, and that the "Maynard girls" proved included Nona Maynard. In my opinion there can not be a shadow of doubt but that the appellant could not have been misled by this slight variance, nor is there a shadow of doubt that he could successfully plead and maintain former jeopardy if prosecuted again with the exact language charged in the indictment corresponding with the exact language proven in this case. Therefore, when the sole objects of the allegation, corresponding with the proof substantially, if not literally, measures up to all of the requisites for the protection of the appellant, in my judgment it should be held that there was no fatal variance between the allegation and the proof.

It has been uniformly held by this court, and is the established law, that where an indictment charges the theft of three or more things— say horses, and particularly describes each horse, or thing—that there is no fatal variance when on the trial proof of the theft of only one of the articles or horses is established and there is no proof about the others. Alderson v. State, 2 Texas Crim. App., 10; Mansfield v. State, 17 Texas Crim. App., 468.

So it has been held, and is also well established, that where an indictment charges the defendant with an assault on two persons, there is no fatal variance when the proof shows the assault upon one only and says nothing about the other. Scott v. State, 46 Texas Crim. Rep., 305. So where an indictment charges that the defendant killed two persons, and the proof is he killed one only, it is held to be no fatal variance. Nite v. State, 41 Texas Crim. Rep., 341.

Again, this court has recently held that where the indictment charges an attempt to poison two persons, there is no fatal variance when the proof shows the attempt to poison one only. Charlie Roberts, alias Browney, v. State, recently decided and not yet reported. Then I can not conceive, when such is the holding of this court, that when a defendant is charged by indictment with slandering one person, and the proof shows that he slandered that one and also another, there could possibly be any fatal variance. It is a poor rule that will not work both ways. In fact, the rule does work both ways. In 22 Ency. of Plead. & Prac., in discussing the question of variance and the degree of conformity required between the allegations and the proof, it is laid down: "Proof of more than is alleged is not regarded

as a breach of the rule that the pleading and the proof must correspond, provided such superabundant proof does not contradict or qualify what is alleged." 22 Ency. Plead. & Prac., p. 539. This same work, in discussing libel and slander, says: "In general, it will be sufficient to prove the words substantially as charged. The old rule in slander, that the words must be proved precisely as laid in the declaration, is obsolete, and now the action will be sustained by proof that the defendant spoke words concerning the plaintiff, slanderous in their natural and obvious meaning, and the same in substance as those stated in the declaration; but this must be done or the action will fail." 13 Ency. Plead. & Prac., p. 63.

Again, this same authority says: "So it is not material that more words are proved than are laid. in the declaration if the additional words do not change the meaning nor do away with the charge. It is absolutely necessary, however, that the additional words do not, by context or connection, alter the sense of the words charged; if they do, this will be fatal to the action." 13 Ency. Plead. & Prac., p. 65.

In fact, the decisions of this court have established the rule that proof of additional words than those charged constitute no fatal variance. Kelley v. State, 51 Texas Crim. Rep., 152; Gipson v. State, 8 Texas Ct. Rep., 691; Conlee v. State, supra.

In the Gipson case, supra, the language charged to have been uttered by the appellant was that "he, Dock Gipson, had frigged and fucked her," giving the name of the female. The proof was that he said that "he and Will Bowers had," using the same words that were charged in the information. The court held there was no fatal variance in that matter.

In the Kelley case, supra, the language charged in the information was that "Etta Liggon is a whore, and I can prove it;" the language proven was, "Etta Liggon is a dirty whore, and I can prove it, and is the cause of my wife leaving me." The court held there was no fatal variance.

The court, in its opinion herein, I think, puts the wrong construction on the testimony. The construction of the court is that the proof of the language charged in the indictment is to the effect that both McBride and Canterberry had had sexual intercourse—not with Nona, the injured party, but that one of them had had intercourse with her, and the other one with the other Maynard girl, Maggie. In this, I think, the court is clearly wrong. The language itself charges that each of these persons, McBride and Canterberry, had had sexual intercourse with Nona—not that one of them had had such intercourse with Nona and the other one with Maggie. The innuendo then makes it clear, wherein it alleges that the language used and the meaning intended to be conveyed was that both of these persons, McBride and Canterberry, had been having sexual intercourse with the said Nona, and that one of them had impregnated her. Taken as a whole, I think it excludes the idea that only one of them had had in-

tercourse with her, but charges expressly that both had, and the innuendo was that one or the other of them had impregnated her.

Re-stated again, I think it very clear that when the allegation in the indictment charges that the two persons had intercourse with Nona Maynard, and the proof shows that the statement was made about the "Maynard girls," which are Nona and Maggie, that there is no variance. In other words, the charge is that they had intercourse with one girl; the proof is that the words uttered were that they had intercourse with that girl and with another, too.

I am convinced that there is no fatal variance and dissent from the opinion of the court in reversing and remanding the case.